IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01677-MSK-BNB

ROGER LORD,

    Plaintiff,

v.

JASON ERFLING, and
ALPINE SHOP, LTD.,

    Defendants.

---

**ORDER DENYING MOTION FOR NEW TRIAL**

---

THIS MATTER comes before the Court on the Plaintiff's Motion for New Trial **(#77)** and Supporting Memorandum **(#78),** to which the Defendants responded **(#95),** and the Plaintiff replied **(#96)**. Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

### II. Background

The Plaintiff, Roger Lord, asserted a claim of negligence against the Defendants, Jason Erfling and the Alpine Shop, Ltd.[1], for injuries sustained in a snowboarding collision between himself and Mr. Erfling at the Copper Mountain ski area.

A jury found that Mr. Lord had injuries and that they were caused by the negligence of

---

[1] Defendant Alpine Shop stipulated prior to trial that any negligence by Mr. Erfling was attributable to it as his employer.

both Mr. Erfling and Mr. Lord. It apportioned the relative responsibility as 49% attributable to Mr. Lord, and 51% attributable to Mr. Erfling. It awarded Mr. Lord economic damages in the amount of $33,000, but made no award of non-economic damages or for physical impairment.

Mr. Lord moves for a new trial under Fed. R. Civ. P. 59(a). He does not challenge the jury's apportionment of fault, but contends that the jury awarded inadequate damages. Mr. Erfling and the Alpine Shop contend that the jury's verdict is supported by the evidence, and that there was conflicting evidence which allowed the jury to award no damages for a non-economic loss or physical impairment.

### III. Issue Presented

The issue presented is whether the jury's award of damages is inadequate and against the weight of the evidence such that a new trial is required.

### IV. Standard of Review

In a diversity case, federal law provides the general framework for determination of a motion for a new trial. *See Blanke v. Alexander,* 152 F.3d 1224, 1235 (10th Cir. 1998). Under Fed. R. Civ. P. 59(a), a court may grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" A motion under Rule 59(a) can be premised upon the argument that the verdict is against the weight of the evidence. *See Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1284 (10th Cir. 1999). However, a court must not disturb the verdict "unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Id.* (citations and quotations omitted). In reviewing the verdict, a court must consider the record in the light most favorable to the prevailing party. *Id.*

In a diversity case, when a motion for a new trial is premised upon the argument that the

jury's award of damages was inadequate, state substantive law governs the adequacy of the award. *See Smith v. Ingersoll-Rand Co.,* 214 F.3d 1235, 1251 (10th Cir. 2000). Under Colorado law, a jury's determination of an award of damages is generally considered inviolate, and a court is not required to divine how a jury calculated its award of damages. *See Higgs v. District Court In and For Douglas County,* 713 P.2d 840, 860-61 (Colo. 1985). The jury's verdict as to damages should not be set aside "unless, in view of the evidence, it can be said with certainty that the verdict is grossly and manifestly inadequate, or unless the amount of the verdict is so small as to indicate clearly that the jury neglected to consider all the evidence pertaining to the plaintiff's injuries." *Martinez v. Shapland,* 833 P.2d 837, 839 (Colo. App. 1992). A new trial on damages is appropriate upon a showing that the jury's decision was arbitrary and capricious, or that the jury was swayed by passion, prejudice, corruption or an improper cause. *See Lee's Mobile Wash v. Campbell,* 853 P.2d 1140, 1143 (Colo. 1993); *Higgs*, 713 P.2d at 860-61.

When there is conflicting evidence as to the nature and extent of a plaintiff's injuries, a jury may properly award no compensation. *Martinez*, 833 P.2d at 839. Even if a jury finds compensable economic losses, it is not required to award non-economic damages if there is conflicting evidence as to the non-economic component. *See Lee's Mobile Wash,* 853 P.2d at 1144. However, if the existence, nature, extent and causation of an injury is undisputed, and the jury awards no damages, then the verdict is inadequate as a matter of law. *Martinez*, 833 P.2d at 839.

## V. Analysis

Mr. Lord challenges several aspects of the jury's damages award in this case. He contends that the jury's verdict is against the weight of the evidence because the evidence clearly showed that he had economic losses in excess of $33,000, that he suffered non-economic injury, and that

3

he suffered physical impairment. In specific, he asserts that there was evidence that his medical bills exceeded $65,000, that he had suffered a loss in income, that the collision has caused him pain and suffering, and that the injury to his back is permanent. He argues that the jury's verdict demonstrates confusion about the facts. He contends that the jury was improperly motivated to reach a verdict before the 3-day weekend and may have been influenced by contemporaneous media coverage of an unrelated skier collision case.

Mr. Erfling and the Alpine Shop, Ltd. respond that the verdict is supported by the evidence. They argue that the evidence as to damages was disputed and that the jury reasonably could have made the findings it did. In specific, they argue that some of Mr. Lord's injuries and concomitant medical expenses were not caused by the collision, and were instead caused by Mr. Lord's conduct after the collision occurred. They also argue that there was no evidence that Mr. Lord lost any income as a result of the collision. Finally, they contend that the jury was not confused and received clear instructions as to its obligations.

First, the Court addresses Mr. Lord's belief that the jury was motivated to reach a verdict before the 3-day weekend and might have been influenced by news media pertaining to a different skier collision. Mr. Lord is correct that the jury returned its verdict on the Friday before the Martin Luther King holiday. After 3 ½ days of evidentiary presentation, the case was submitted to the jury on the afternoon of Friday, January 17, 2008. The jury deliberated for approximately 3 hours and reached a verdict at almost precisely 5:00 p.m.

Notwithstanding the timing of the jury's verdict, Mr. Lord points to nothing other than the time the jury delivered the verdict which would suggest that the jury felt some urgency to return it. The jury was instructed that it would likely be released each day at 5:00 p.m, but that it could

request to conclude its deliberations earlier each day, and that deliberations would continue from one business day to another until concluded.[2] The jury was also instructed that a unanimous verdict was required.[3]

There was a single claim of negligence; the parties stipulated to many facts[4]; presentation of evidence and argument took only 3 ½ days. The jury deliberated for almost 3 hours. There is no required time for deliberation, and although this period was somewhat brief, the time taken for deliberation is not unusual. The length of the jury's deliberation may well reflect its efficiency or consensus. In the absence of something to suggest undue pressure upon or haste by the jury, the Court must presume that the jury followed the instructions given to it and based its verdict on the evidence presented at trial. *See Questar Pipeline Co. v. Grynberg,* 201 F.3d 1277, 1287 (10th Cir. 2000).

In addition, Mr. Lord argues that the jury may have been influenced by local and national

---

[2] Concluding Instruction No. 22 stated in pertinent part:
The jury is always released from the courtroom, ordinarily at 5:00 p.m. If you desire to conclude a day's deliberations at an earlier time, please advise by a note signed by the foreperson. Upon receiving such a note, we will reconvene in the courtroom as soon as possible. The foreperson shall then state the time you intend to resume deliberations on the next business day. On that day, the foreperson shall advise by note confirming that all jurors are present and deliberations have begun. . . .

[3] Concluding Instruction No. 23 stated:
In order to return a verdict, it is necessary that all jurors agree; your verdict must be unanimous. It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. You must each evaluate the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. Remember at all times that you are not partisans. You are judges–judges of the facts. Your role is to seek and determine the truth based on the evidence presented to you.

[4] These were contained in Introductory Instruction No. 9.

5

media coverage of an unrelated skier collision case involving a 60-year old man who sued a 7-year old skier. The Court notes that Mr. Lord does not specify any reason to suspect that the jury knew of or concerned itself with such coverage.

In the record, there were only two references to media coverage. The first was in *voir dire*. A prospective juror (who ultimately was selected and became the foreperson of the jury) stated that he had seen headlines in the newspaper referring to a skier collision. When asked whether he could disregard the headlines and whether he would consider only the evidence presented in the case, he affirmed that he would do so. There was no challenge made by either party to this juror.

The only other reference to media coverage was in Introductory Instructions 4 and 7. Introductory Instruction 4 stated, in pertinent part, that: "There are certain things that are not evidence, and you may not consider these things in determining the facts. . . . Anything you see or hear outside the courtroom is not evidence. You must limit yourself to the evidence presented here in the courtroom." Introductory Instruction 7 stated: "Now, a few words about your conduct during the case. . . . (4) Do not read or listen to anything reported by the media or press that relates to this case - this means newspapers, TV or any other medium. If anyone should try to talk to you about it, tell the Courtroom Deputy, who will tell me. (5) Do not do any research or make any investigation about the case on your own. This prohibition includes reference to books, prior media reports and the internet." Again, in the absence of some evidence to the contrary, the Court must presume that the jury followed the instructions given to it, and did not base its verdict on an unrelated collision.

Next, the Court turns to the issue of whether the jury's award of damages was adequate.

Many of the facts pertinent to Mr. Lord's claim were not controverted and were set out in Introductory Instruction No. 9. Among the stipulated facts were how, when and where the collision occurred, and that Mr. Lord's reasonable and necessary medical bills as a result of the collision through July 14, 2006 were $27,900.01. The evidence at trial established that as a result of the collision, Mr. Lord sustained fractures in his L2, L3 and L4 vertebrae, and injury to his L2-L3 disc. There was also evidence that sometime after the collision and after Mr. Lord had healed from it, he suffered from deterioration in the disc between L5-S1 and that Mr. Lord suffered from an attempt to lift an ice chest in 2006. As to the causation of Mr. Lord's disc problems at L5-S1, the parties disagreed. Mr. Lord contended that these were caused by the collision; the Defendants argued that they resulted from aging and ordinary wear and tear from Mr. Lord's activities.

There was conflicting evidence as to whether Mr. Lord suffered extensive pain or lasting injury as a result of the collision. In a challenge to Mr. Lord's credibility, the defense offered evidence that approximately two months after the collision, Mr. Lord reported to his physical therapist that he had experienced no pain for the prior 5 weeks, and that he had done yard work and gone for a 7-mile hike without any complaints. The defense also offered evidence that Mr. Lord had performed remodeling work on his shower and had done "lots of lifting without any pain" just a few months after the collision.

There was evidence that the fractures caused by the collision healed as expected. Dr. James Lubowitz opined that although Mr. Lord may experience mild, intermittent back pain from the vertebral fractures, the fractures would not significantly limit his physical abilities. He also testified that the problem with the L2-L3 disc which resulted from the collision did not cause the sciatic pain which Mr. Lord claimed to be experiencing in his legs and feet. According to Dr.

7

Lubowitz, it is degenerative damage to and herniation of the L5-S1 disc, caused by wear and tear unrelated to the collision, that has caused Mr. Lord's leg and foot pain. Dr. Lubowitz testified that the L5-S1 disc became symptomatic either when Mr. Lord lifted the ice chest in July 2006, or when he took a long car ride between New Mexico and Colorado.

There was also conflicting evidence as to Mr. Lord's economic losses. Although there was evidence that Mr. Lord incurred more than $65,000 in total medical expenses, the parties disputed how much of these expenses were attributable to the collision as compared to the L5-S1 disc problems. In addition, there was evidence that Mr. Lord did not lose any wages because of the collision.

It is not appropriate for this Court to substitute its interpretation of the evidence for that of the jury. Instead, it is required to construe the evidence in a light most favorable to Mr. Erfling and the Alpine Shop. Taking into account the challenge to Mr. Lord's credibility, the jury's obligation to assess his believability in accordance with Concluding Instruction No. 5,[5] and the presence of conflicting evidence with regard to all issues of which Mr. Lord complains, the Court cannot find that the jury's damage award was clearly, decidedly, or overwhelmingly against the

---

[5] Concluding Instruction No. 5 stated:
    In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In evaluating the testimony of any witnesses, you may consider:
1.    the opportunity and ability of the witness to see or hear or know the things testified to;
2.    the witness' memory;
3.    the witness' manner while testifying;
4.    the witness' interest in the outcome of the case and his or her bias or prejudice;
5.    whether other evidence contradicted the witness' testimony;
6.    the reasonableness of the witness' testimony in light of all the evidence; and
7.    any other factors that bear on believability.

weight of the evidence.

**IT IS THEREFORE ORDERED** that Mr. Lord's Motion for New Trial **(#77)** is **DENIED**.

Dated this 22nd day of April, 2008

                               **BY THE COURT:**

                               Marcia S. Krieger
                               United States District Judge